O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KAHN CREATIVE PARTNERS, INC.

Plaintiff,

vs.

NTH DEGREE, INC.

Defendant.

CASE NO. CV 10-932-JST (FFMx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## I.  INTRODUCTION

Before the Court is Defendant Nth Degree, Inc.'s Motion for Summary Judgment or, in the alternative, Partial Summary Judgment.  (Doc. 25.)  Plaintiff Kahn Creative Partners, Inc. filed an opposition (Doc. 39), and Defendant filed a reply (Doc. 43).  Having read the briefs and heard oral argument, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment.  The Court grants the Motion as to Plaintiff's breach of oral contract, breach of oral partnership agreement, breach of oral joint venture agreement, breach of the covenant of good faith and fair dealing, and promissory estoppel claims, and denies the Motion as to Plaintiff's breach of implied partnership, breach of implied joint venture, breach of fiduciary duty, unjust enrichment, and unfair business practices claims.

## II.  BACKGROUND

Plaintiff is a strategic communications agency, and Defendant is a global event marketing and management company.  (Def.'s Resp. to Pl.'s Statement of Genuine Disputes ("Undisputed Facts"), Doc. 43-1, ¶¶ 1, 4.)  In June 2008, Defendant communicated with Plaintiff about the possibility of working together on a response to a Request for Proposals ("RFP"), which had not yet been released, for the 2010 RSA Conference, which is held every year in the United States, Europe, and Japan ("Conference").  (*Id.* ¶ 9.)  Hosted by RSA Security, Inc. ("RSA"), the Conference focuses on information technology ("IT") and hosts IT security experts who gather to share the latest advancements in the area of internet security.  (*Id.* ¶ 3.)  The RFP aimed at finding a company to produce and manage the Conference in the United States and Europe.

On August 6, 2008, Plaintiff and Defendant met in Las Vegas to discuss the RFP and Plaintiff's interest in working on a joint response with Defendant.  (*Id.* ¶ 15.)  From August 2008 to December 2008, the parties kept in contact.  (*Id.* ¶ 19.)  At this time, Plaintiff was interested in responding to the RFP, but it did not want its role to be confined to "audience acquisition."  Also, Plaintiff was concerned about whether it had the resources to respond to the RFP and still manage its current clients.  (*Id.* ¶¶ 20, 22.)  On

December 4, 2008, the parties met with the general manager of the Conference to discuss the forthcoming RFP.  (*Id.* ¶ 24.)  On that day, Plaintiff decided to work with Defendant on the response to the RFP.  (*Id.* ¶ 31.)

On January 26, 2009, RSA issued the RFP for the Conference to a select number of companies, including Defendant.  (*Id.* ¶ 34.)  The RFP sought proposals for the "strategic, creative, and logistical planning and execution" of the Conference.  (*Id.* ¶ 35.)  The RFP was divided into two sections.  Part 1, entitled "Event Specifications," outlined the areas of work for which RSA was seeking proposals and was "largely logistical in nature."  (*Id.* ¶ 38; Def.'s Compendium of Evid. in Supp. of Mot. for Summ. J. ("Def.'s Compendium") Doc. 25-3, Exh. 2 at 12.)  Part 2, entitled "Business Acumen," "aim[ed] to understand the strategic business acumen and knowledge that [the proposing] organization [could] bring" to the Conference.  (Undisputed Facts ¶ 39; Def.'s Compendium, Exh. 2 at 12.)  On February 9, 2009, Plaintiff and Defendant met to brainstorm ideas about how to approach the RFP.  (Undisputed Facts ¶¶ 17, 23.)  Each party had its own "team" devoted to this process.  (*Id.* ¶ 42.)

On March 31, 2009, RSA issued a Request for Information ("RFI"), which separated the creative and marketing tasks associated with the Conference from the RFP. (*Id.* ¶ 51.)  The RFI stated that the "Conference is looking for an agency with exceptional experience in integrated communications programs including planning, direct response, interactive marketing and business savvy."  (Def.'s Compendium, Exh. 3 at 1.)  Both parties understood that the marketing tasks of the Conference would be awarded separately from the rest of the RFP.  (Undisputed Facts ¶ 56.)

On May 8, 2009, Plaintiff and Defendant submitted their joint proposal to the RFP, which included a response to the RFI.  (*Id.* ¶ 58.)  On May 13, 2009, Conference staff invited the parties for a "face-to-face" presentation  to "showcase [their] strategic thinking," and specifically requested that "the agency members that will make up [their] day-to-day team be in the room and present portions of the plan."  (*Id.* ¶ 33.)  Defendant requested that members of Plaintiff's team attend the meeting and present the "strategic,

higher level message" of the presentation.  (*Id.* ¶ 35.)  Plaintiff and Defendant then jointly created and developed the presentation, and on May 28, 2009, members of both teams presented to Conference staff.  (*Id.* ¶¶ 37-39.)

On June 5, 2009, the Conference awarded Defendant the management and production of the Conference.  (*Id.* ¶ 61.)  On June 17, 2009, Plaintiff was notified that it had not been chosen under the RFI to manage the marketing portion of the Conference. (*Id.* ¶ 62.)  Defendant proceeded, without Plaintiff, to accept the contract to manage and produce the Conference.

On February 8, 2010, Plaintiff filed suit against Defendant alleging claims for (1) breach of oral contract, (2) breach of oral partnership, (3) breach of implied partnership, (4) breach of oral joint venture agreement, (5) breach of implied joint venture, (6) promissory estoppel, (7) breach of fiduciary duty, (8) breach of the covenant of good faith and fair dealing, (9) unjust enrichment, and (10) unfair business practices.  (*See generally* Compl.)  Plaintiff alleges *inter alia* that the parties formed an oral agreement and partnership on December 4, 2009 to share in the work and profits of producing and managing the Conference, and that Defendant breached the contract and partnership by accepting the contract to produce and manage the Conference without Plaintiff.

## III.   LEGAL STANDARD

In deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

## IV. DISCUSSION

### A. Evidentiary Objections

Defendant objects to Plaintiff's Statement of Genuine Disputes because it was untimely. Defendant also objects to declarations submitted by Plaintiff from Sharon Weber and Michael Trovalli on numerous grounds, including that the declarations contained statements that are irrelevant, hearsay, and lacked foundation. (Docs. 43-2, 43-3); (*see* Pl.'s Compendium of Evid. ("Pl.'s Compendium"), Decls. of Weber and Trovalli.)

As to timeliness, the Court recognizes that Plaintiff submitted its opposition and accompanying evidence 15 minutes late. The opposition was due on March 14, 2011, and it did not appear on the docket until 12:15 a.m. on March 15, 2011. The Court also recognizes, however, that it "has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002). Thus, the Court DENIES Defendant's objections as it finds that Plaintiff's 15-minute delay did not prejudice Defendant's ability to file a reply.

As to substantive objections, the Court notes that "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). The Court has reviewed both declarations, but has not relied on either for its ruling. The objections are therefore DENIED.

**B. Breach of Oral Contract, Breach of Oral Partnership Agreement, Breach of Oral Joint Venture Agreement, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Promissory Estoppel Claims**

Plaintiff brings claims for breach of oral contract, breach of oral partnership agreement, breach of oral joint venture agreement, and breach of the implied covenant of good faith and fair dealing. Because the existence of a contract is a prerequisite to these claims, the Court considers them simultaneously. *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 96 Cal. Rptr. 3d 813, 850 (Cal. Ct. App. 2009) ("Breach of the covenant of good faith and fair dealing is nothing more than a cause of action for breach of contract."); *Weiner v. Fleischman*, 54 Cal. 3d 476, 490 (Cal. 1991) (recognizing an oral joint venture or partnership agreement as an oral contract). Further, because a promissory estoppel claim is viewed as akin to a breach of contract claim, yet only equitable in nature, the Court analyzes it here. *U.S. Ecology, Inc. v. State*, 28 Cal. Rptr. 3d 894, 906-07 (Cal. Ct. App. 2005).

1. Did an Oral Contract/Agreement Exist Between the Parties?

Under California law, a contract requires (1) parties capable of contracting , (2) mutual consent or assent between the parties, (3) a lawful object, and (4) sufficient consideration. Cal. Civ. Code § 1550. To be enforceable, the terms of the contract must also be certain. *Magna Dev. Co. v. Reed*, 39 Cal. Rptr. 284, 288 (Cal. Ct. App. 1964) ("It is well established, however, that where a party seeks specific performance of a contract, the terms of the contract must be complete and certain in all particulars essential to its enforcement."); *see* Cal. Civ. Code § 3390(5) ("The following obligations cannot be specifically enforced: an agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable."). On summary judgment, a court can decide whether a contract existed as a matter of law if there are no genuine issues of material fact. *Bustamante v. Intuit, Inc.* 45 Cal. Rptr. 3d 692, 699 (Cal. Ct. App. 2006) ("Where the existence of a contract is at issue and the evidence is conflicting or admits of

more than one inference, it is for the trier of fact to determine whether the contract actually existed. But if the material facts are certain or undisputed, the existence of a contract is a question for the court to decide.”).

Defendant asserts that the parties did not form an enforceable contract because there lacked (1) mutual consent between the parties and (2) certain terms. (Def.’s Mot. at 12.) Defendant argues further that even if there were mutual consent and certain terms of the oral contract, it would have been void under the Statute of Frauds. As to the alleged terms of the contract, Plaintiff alleges that they were “simple – if [Plaintiff] assisted [Defendant] in jointly preparing a response to the RFP, and the RFI once it was carved out of the RFP, the parties would share in any work and profits realized from winning the RFP and/or the RFI.” (Pl.’s Opp. at 18.) However, Plaintiff has provided no evidence that these “terms” became part of *any* oral agreement between it and Defendant. Even if there were corroborating evidence as to that effect, these alleged “terms” were indeed “simple”: so simple that they failed to clarify each party’s obligations under the contract, i.e., the responsibilities of Plaintiff and Defendant vis-à-vis the Conference, or define how each party would be compensated for such work. If “a supposed ‘contract’ does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract.” *Weddington Prods., Inc. v. Flick*, 71 Cal. Rptr. 2d. 265, 277 (Cal. Ct. App. 1998). Moreover, “[w]here a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.” *Robinson & Wilson, Inc. v. Stone*, 110 Cal. Rptr. 675, 683 (Cal. Ct. App. 1973). Here, the terms of the alleged contract were “uncertain and indefinite” as to the obligations of the parties, and an oral contract therefore could not have existed.

Furthermore, even if the terms of the contract were certain and definite, there is no evidence of mutual consent between Plaintiff and Defendant as to those terms. “Without mutual assent, there is no contract.” *Merced Cnty. Sheriff’s Emps. Assn. v. Cnty. of Merced*, 188 Cal. App. 3d 662, 670 (Cal. Ct. App. 1987). “Mutual consent is determined

under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions of understandings." *Bustamante*, 45 Cal. Rptr. 3d at 699 (quoting *Alexander v. Codemasters Grp. Ltd.*, 104 Cal. App. 4th 129, 141 (Cal. Ct. App. 2002)). Mutual consent "cannot exist unless the parties 'agree upon the same thing in the same sense.'" *Id.* at 698. "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation." *Id.* at 698-99; *Robinson & Wilson*, 110 Cal. Rptr. at 683 ("[I]t is requisite to enforceability that [a contract] must evidence a meeting of the minds upon the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages.").

The parties do not dispute that Plaintiff agreed to work with Defendant on the response to the RFP "sometime around" December 4, 2008. (Uncontroverted Facts ¶ 31.) Plaintiff claims that the contract "began" on January 26, 2009, "when the condition precedent to the contract, official issuance of the RFP occurred." (Pl.'s Opp. at 20.) Plaintiff has failed to produce any evidence, however, that Defendant ever intended to form a contract or, more importantly, that Defendant and Plaintiff assented to the "same thing in the same sense." *Bustamante*, 45 Cal. Rptr. 3d at 698. The parties do not dispute that they jointly prepared and submitted a response to the RFP, but as to the management and production of the Conference, there is no evidence that both parties contracted to share in that responsibility.

The only piece of evidence submitted by Plaintiff that arguably addresses mutual consent is a declaration by Sharon Weber, a principal of Plaintiff's, in which she states that in an August 6, 2008 meeting between her, other representatives of Plaintiff, and Robert Lowe, Defendant's employee and the "Event Architect" for the RFP response, Lowe indicated that "as partners, [Defendant] and [Plaintiff] would share equally" in the "many streams of work" involved with the Conference. (Pl.'s Compendium, Weber Decl. ¶ 5.)

Taking this generally vague statement as true, it nonetheless fails to create a genuine issue of material fact as to whether mutual consent occurred between the parties for two reasons. First, the statement is vague and fails to establish certain terms. Second, "shar[ing] equally" in profits may touch upon whether a partnership existed, but it is not sufficient evidence of a contract.

Thus, because the terms of the alleged contract were ambiguous and, moreover, Plaintiff and Defendant did not mutually consent to those terms, a contract did not exist between the parties, and Plaintiff's breach of oral contract, breach of oral partnership agreement, breach of oral joint venture agreement, and breach of the implied covenant of good faith and fair dealing fail as a matter of law. Because the Court disposes of Plaintiff's breach of contract claim on those grounds, it need not determine whether the Statute of Frauds applies.

2. Promissory Estoppel Claim

"The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to who the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *U.S. Ecology, Inc. v. State*, 28 Cal. Rptr. 3d 894, 905 (Cal. Ct. App. 2005). "Because promissory estoppel is an equitable doctrine to allow enforcement of a promise that would otherwise be unenforceable, courts are given wide discretion in its application." *Id.* Like its breach of oral contract and partnership agreement claims, Plaintiff's promissory estoppel claim fails as a matter of law due to the absence of any evidence as to a clear and unambiguous promise made by Defendant.

Defendant contends that Defendant offered Plaintiff the opportunity to bid on the marketing aspect of the RFP and agreed to pay KCP's out-of-pocket expenses, which Plaintiff accepted and performed by participating in the joint response. (Def.'s Mot. at 22.) Defendant argues that it never promised that Plaintiff would jointly manage the Conference. (*Id.*) Plaintiff disagrees, and asserts that Defendant promised that if Plaintiff

assisted in jointly preparing the response to the RFP, and the response led to a contract, the parties would share in the work and profits of the project. (Pl.'s Opp. at 22.) In light of these juxtaposing positions, to survive summary judgment, Plaintiff would need to produce evidence of a clear and unambiguous promise from Defendant. However, Plaintiff has failed to provide any evidence that Defendant made an explicit promise that Plaintiff would jointly manage the Conference and, thus, has failed to create a triable issue. The Court therefore grants Defendant's Motion for Summary Judgment as to Plaintiff's promissory estoppel claim.

**C. Did a Partnership/Joint Venture Exist?**

Plaintiff brings claims for breach of implied partnership, breach of implied joint venture, and breach of fiduciary duty. These claims rest on whether an implied partnership/joint venture existed between Plaintiff and Defendant. *See Wolf v. Superior Court*, 130 Cal. Rptr. 2d 860, 863 (Cal. Ct. App. 2003) ("Traditional examples of fiduciary relationships in the commercial context include . . . business partners, joint adventures . . . ."). Thus, the Court turns to that question here.

Under California Corporations Code section 16202(a), "the association of two or more persons to carry on as coowners of a business for profit forms a partnership, whether or not the persons intend to form a partnership." Cal. Corp. Code § 16202(a). "Whether a partnership or joint venture exists is primarily a factual question to be determined by the trier of fact from the evidence and inferences to be drawn therefrom." *Bank of Cal. v. Connolly*, 111 Cal. Rptr. 468, 478 (Cal. Ct. App. 1973). "Although a partnership ordinarily involves a continuing business, whereas a joint venture is usually formed for a specific transaction or a single series of transactions, the incidents of both relationships are the same in all essential respects." *Connolly*, 111 Cal. Rptr. at 477.

"A joint venture or partnership may be formed orally or assumed to have been organized from a reasonable deduction from the acts and declarations of the parties." *Weiner*, 54 Cal. 3d at 482-83 (internal citations omitted). Likewise, "[a] joint venture

exists where there is an ‘agreement between the parties under which they have a community of interest, that is, joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.’” *Connolly*, 111 Cal. Rptr. at 477 (quoting *Holtz v. United Plumbing & Heating Co.*, 49 Cal. 2d 501, 506-507 (Cal. 1957)). “In determining whether a relationship such as that of partners has been created, the courts are guided not only by the spoken or written words of the contracting parties, but also by their acts.” *Singleton v. Fuller*, 118 Cal. App. 2d 733, 740 (Cal. Ct. App. 1953). The existence of a partnership or joint venture must be established by a preponderance of the evidence. *Weiner*, 54 Cal. 3d at 490.

Defendant argues that a joint venture or partnership did not exist between it and Plaintiff because (1) Plaintiff in the past has used various forms of the word “partner” to describe non-partnership relationships, (2) there was no “community of interest” in management of the Conference, and (3) there was no agreement to share in profits derived from the Conference. (Def.’s Mot. at 19-20.) Plaintiff contends that, at a minimum, there are genuine issues of material fact as to whether the parties formed a partnership or joint venture based on the parties’ work in jointly preparing the response to the RFP and RFI. (Pl.’s Opp. at 15-16.) The Court agrees with Plaintiff.

Addressing Defendants’ arguments first, how or why Plaintiff used the word “partner” or “partnership” in the past is relevant only to the extent that no other evidence exists for the Court to find that the ultimate trier of fact could reasonably deduce the existence of a partnership. *See Weiner*, 54 Cal. 3d at 482-83. Because the Court finds that based on the actions and words of the parties there is a possibility that a trier of fact could reasonably find that a partnership existed, as explained further below, this argument is unavailing. As to a community of interest, the parties do not dispute that over a span of approximately six months, from December 2008 to May 2009, they worked jointly on a response to the RFP/RFI. This alone refutes Defendant’s contention that the parties lacked a joint interest in a common business undertaking. Finally, the absence of an express agreement to share profits is not dispositive in proving that a partnership did not exist.

*Holmes v. Lerner*, 74 Cal. App. 4th 442, 453 (Cal. Ct. App. 1999) (finding that the California "Legislature intend[ed] profit sharing to be evidence of a partnership, rather than a required element of the definition of a partnership" and thus "the presence or absence of . . . [the] sharing of profits and losses, is not necessarily dispositive."). Thus, Defendant's arguments are unconvincing.

Looking at the evidence before it, the Court finds that there exists a genuine issue of material fact as to whether a partnership or joint venture existed between Plaintiff and Defendant. First, the parties do not dispute that the joint response to the RFP entailed each party devoting a "team" to the project and numerous face-to-face interactions and communications between the parties. These interactions included "brainstorming" sessions and meetings concerning the strategy Plaintiff and Defendant would employ in responding to the RFP/RFI, and a meeting with Conference staff to discuss Plaintiff's and Defendant's joint response. Interspersed between these interactions were e-mail communications about the parties' potential partnership. For example, on August 7, 2008, Robert Lowe, Defendant's employee and the Event Architect for the response to the RFP, sent an email to multiple principals of Plaintiff stating: "I just wanted to send you all a quick note saying thanks for taking the time to meet with us in Vegas yesterday. I felt it was a productive step towards a promising partnership." (Pl.'s Compendium of Ev., Exh. 104.) Four months later, on December 10, 2008, Sharon Weber, Plaintiff's employee, sent Lowe a similar email stating that she felt that a recent meeting the parties had "set a good foundation for our continued dialogue around how our two companies can *partner* in a collaborative relationship for the RSA conference." (Def.'s Compendium of Ev., Exh. 13.)

As the relationship progressed and Plaintiff definitively agreed to help with the RFP response, the parties had regular communication regarding the substance and direction of their joint response to the RFP. On February 4, 2009, Lowe sent Weber an email in preparation for a "brainstorming" session for the RFP response, stating as follows: "Thinking out loud[,] here are the high points we need to address before we get into the nitty-gritty . . . What is the best way to present our partnership to them?" (Pl.'s

Compendium of Ev., Exh. 106.) Two days later, Weber sent an email to Lowe and attached a "first pass at a creative brief" for the joint response to the RFP. (*Id.*, Exh. 21.) The attached draft was entitled "KCP Nth Degree RSA Proposal Creative Brief: Draft" and included an "opportunity" section, which aimed "[t]o position the *combined strategic alliance* of Nth Degree and KCP as the ideal 'total solution' *partner* moving forward on the RSA Conference." (*Id.* at 344 (emphasis added).) The draft also stated that the proposal's "communication objectives" were to "[g]enerate confidence that the combined Nth Degree-KCP team is the optimal long term strategic partner to help raise the bar for RSA . . . ." (*Id.*) The parties do not dispute that each party had control over certain parts of the joint response, nor do they dispute that the parties worked jointly on the response as whole (Uncontroverted Facts ¶ 32 at 41); *see Connolly*, 111 Cal. Rptr. at 478 ("An essential element of a partnership or joint venture is the right of joint participation in the management and control of the business.").

Beyond these communications, the content of the 258-page joint response to the RFP/RFI raises questions as to whether the parties were potentially partners/joint venturers in managing and producing the Conference. The front page of the response features both companies' logos, Defendant's directly above Plaintiff's. (Def.'s Compendium, Exh. 5.) Every subsequent page features a logo on the bottom left-hand side of the page that reads "Nth Degree Events + kahn creative partners." (*See generally id.*) There are also representations throughout the response that give the impression that the parties were partners in various aspects of the Conference. Under the "Business Acumen" section of the response, it states that the "combined Nth Degree Events + Kahn Creative Partners team brings extensive global experience to the RSA Conference . . . ." (*Id.* at 78.) The response also states that Defendant "also anticipate[s] being able to fully and quickly integrate the Kahn Creative Team with your team through a series of face-to-face strategy meetings over the summer, as well as their possible participation in 2010 boot camp." (*Id.* at 90.) The response further represents that "[Defendant's] extensive experience,

combined with the creative event strategy expertise that Kahn Creative Partners brings to the table, ensures you the greatest success." (*Id.* at 110.)

Contrary to Defendant's argument that Plaintiff was responsible only for the marketing aspect of the Conference (Def.'s Mot. at 22-23), the joint response represents otherwise. For example, the response states that the "Nth Degree Events + Kahn Creative Partner team is your best choice to market *and manage* RSA Conference, both in the U.S. and in Europe." (*Id.* at 177.) Likewise, the organizational chart for the "team" that would be handling the conference includes members of both Plaintiff and Defendant, and some of Plaintiff's employees were included in groups other than "Marketing and Creative." (*Id.* at 133.) Specifically, Weber and Trovalli, both Plaintiff's employees, are listed in the Strategy Group as "Brand Strategist" and "Event Strategist," respectively. (*Id.*)

Furthermore, the parties' communications and actions after submitting the response also contradict Defendant's position that Plaintiff was bidding separately on the marketing piece of the Conference and was not, as Plaintiff contends, a partner with Defendant. After receiving the joint response, the Conference invited the team to come in for a "face-to-face" presentation to "showcase [their] strategic thinking," and specifically requested that "the agency members that will make up [their] *day-to-day team* be in the room and present portions of the plan." (Uncontroverted Facts ¶ 33 (emphasis added).) Upon receiving this invitation, Lowe from Defendant sent an email on May 18, 2009 to Weber and Trovalli from Plaintiff, stating that in terms of the "strategic, higher level message," Defendant felt "that it is important for [Plaintiff] to provide [the Conference staff] with this type message [sic] and to get across since *you are new to the team* and *were brought into this team to exactly fill this void* . . . ." (Pl.'s Compendium, Exh. 103 (emphasis added).) Plaintiff then helped prepare the majority of the presentation and subsequently presented a substantial portion of it to the Conference staff. (Undisputed Facts ¶ 36.)

Based on this evidence, the Court finds that there remains a genuine issue of material fact as to whether an implied joint venture/partnership existed between Plaintiff and Defendant, and whether Defendant breached this implied joint venture/partnership in

accepting the contract to manage and produce the Conference without including Plaintiff or sharing with Plaintiff the profits derived therefrom. Thus, the Court denies Defendant's Motion for Summary Judgment as to Plaintiff's claims for breach of implied partnership and breach of implied joint venture. Because a joint venture or partnership imposes fiduciary duties on the parties involved therein, *see City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (Cal. 2008), the Court also denies Defendant's Motion as to Plaintiff's breach of fiduciary duty claim.

**D. Unjust Enrichment**

"California courts appear to be split on whether a stand alone cause of action for unjust enrichment is anything more than 'a general principle, underlying various legal doctrines and remedies.'" *Mattell, Inc. v. MGA Entm't, Inc.*, --- F. Supp. 2d ----, 2010 WL 5422504, at *71 (C.D. Cal. Dec. 27, 2010) (quoting *Herrington v. Johnson & Johnson Consumer Co., Inc.*, 2010 WL 3448531, at *13 (N.D. Cal. Sept.1, 2010)(listing cases)); *see McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 122 (Cal. Ct. App. 2004) ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution.") (internal citations and quotation marks omitted). However, to the extent that an unjust enrichment claim exists, "[t]he elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008).

Plaintiff bases its unjust enrichment claim on the alleged oral contract/agreement between it and Defendant and the fact that it "has not received the reasonable value of its services." (*See* Compl. ¶¶ 80-81 ("Plaintiff[] performed al conditions required of it under the Agreement . . .[but] [Plaintiff] has not received the reasonable value of its services, or the amounts to which it is entitled under the Agreement."). Under California law, unjust enrichment has been defined as an action in quasi-contract, which does not exist when an enforceable, binding agreement exists between the parties. *Paracor Fin., Inc. v. Gen. Elec.*

*Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Because the Court has found that a contractual relationship does not exist between Plaintiff and Defendant, an unjust enrichment claim may stand if Plaintiff can show that Defendant received a benefit and retained it at the expense of Plaintiff.

Here, there is a genuine dispute of material fact as to whether Defendant received a benefit, i.e., the contract to manage and produce the Conference and the proceeds therefrom, at the expense of Plaintiff. As discussed above, Plaintiff and Defendant jointly worked on and submitted a response to the RFP. Thus, there remains a triable issue as what relationship existed between the parties, i.e., partnership, joint venture, neither, and what, if anything, Plaintiff was entitled from Defendant's acceptance and performance of the contract to produce and manage the Conference.

Accordingly, the Court denies Defendant's Motion as to Plaintiff's unjust enrichment claim.

**E. UCL Claim**

California's Unfair Competition Law ("UCL") covers "any unlawful, unfair, or fraudulent business act or practice . . . ." Cal. Bus. & Profs. Code § 17200. For a claim for "unlawful" business practice under the UCL, the plaintiff must show the violation of "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). Here, Plaintiff bases its UCL claim on the previously discussed claims. Because there remain genuine issues of material fact as to Plaintiff's breach of implied partnership, breach of implied joint venture, breach of fiduciary duty, and unjust enrichment claims, summary judgment on Plaintiff's UCL claim is inappropriate. The Court therefore denies Defendant's Motion as to this claim.

**V. CONCLUSION**

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment. The Court grants the Motion as to Plaintiff's breach of oral contract, breach of oral partnership agreement, breach of oral joint venture agreement, breach of the covenant of good faith and fair dealing, and promissory estoppel claims, and denies the Motion as to Plaintiff's breach of implied partnership, breach of implied joint venture, breach of fiduciary duty, unjust enrichment, and unfair business practices claims.

DATED: March 29, 2011

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE